IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| **LARRY R. STEELE,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **No. PE:22-CV-00004-DC** |
| | § | |
| **UNITED STATES POSTAL SERVICE** | § | |
| *et al.,* | § | |
| *Defendants*. | § | |

## ORDER ADOPTING REPORT AND RECOMMENDATION
## OF THE U.S. MAGISTRATE JUDGE

Plaintiff Larry R. Steele ("Plaintiff"), an individual currently incarcerated with the Lynaugh Unit of the Texas Department of Criminal Justice ("TDCJ"), brings this action pursuant to 42 U.S.C. § 1983, arguing that, in pertinent part, TDCJ officials violated his constitutional rights in connection with his self-representation in various federal court proceedings. United States Magistrate Judge David B. Fannin, in his Report and Recommendation (hereafter, "R&R") filed on October 11, 2022, recommends granting Defendants Brian Collier ("Collier") and Bobby Lumpkin's ("Lumpkin") (together, "Defendants") Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(6) (hereafter, "Motion to Dismiss"). (Doc. 19). Plaintiff timely filed objections to the R&R. (Doc. 31). After due consideration, the Court **OVERRULES** Plaintiff's objections, **ADOPTS** the R&R (Doc. 29), and **GRANTS** the Motion to Dismiss (Doc. 19).

## I.    BACKGROUND

Plaintiff agrees to the Magistrate Judge's chronicling of this case's facts. (Doc. 31 at 2 ("[Plaintiff] will accept [the Magistrate Judge's] rendition as true enough.")). Therefore, the statement of the factual background in the R&R will be adopted here.

Defendants filed their Motion to Dismiss on June 10, 2022, asserting *inter alia* the defense of qualified immunity.  (Doc. 19).  Plaintiff filed a Response to the Motion to Dismiss on July 5, 2022.  (Doc. 22).  The Magistrate Judge recommended granting the Motion to Dismiss and dismissing Defendants Lumpkin and Collier from this action based on (1) Plaintiff's failure to state an injury, and (2) Defendants' entitlement to qualified immunity in the alternative.  (Doc. 29).  On November 1, 2022, Plaintiff objected to the R&R on the following grounds: (1) the Lynaugh Unit does not contain "a system for the mailing of legal mail," which prohibited Plaintiff's timely filing of certain documents; (2) Defendants "should have known that the USPS is delinquent in the delivery of [] mail"; (3) the Magistrate Judge incorrectly read Plaintiff's claims as stating only a Fourteenth Amendment violation instead of also a violation of Plaintiff's First Amendment right to redress his grievances and be heard; (4) Defendants are not entitled to qualified immunity because they knew or should have known they were violating his rights. (Doc. 31).

## II.    LEGAL STANDARD

When a defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the trial court must assess whether a complaint states a plausible claim for relief.  *See Raj v. La. State Univ.*, 714 F.3d 322, 329–30 (5th Cir. 2013) (citing *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012)).  The court must accept "all well-pleaded facts in the complaint as true and viewed in the light most favorable to the plaintiff."  *See id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On the other hand, if the complaint only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," dismissal is appropriate.  *Iqbal*, 556 U.S. at 678

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Shaw v. Villanueva*, 918 F.3d 414, 415 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678).  The court should dismiss a complaint if the court can only infer the mere possibility of misconduct, or if the plaintiff has only alleged that he is entitled to relief rather than stating a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678–79 (quoting *Twombly*, 550 U.S. at 570).

Under 28 U.S.C. § 636(b) and Federal Rules of Civil Procedure Rule 72(b), a party may serve and file specific, written objections to the proposed findings and recommendations of the magistrate judge within 14 days after being served with a copy of the Report and Recommendation, and thereby secure a de novo review by the district court.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation in a Report and Recommendation bars that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *United States v. Wilson*, 864 F.2d 1219 (5th Cir. 1989) (per curiam).

### III.   DISCUSSION

As a preliminary matter, Plaintiff's Response to the Motion to Dismiss purportedly presents a motion under Federal Rule 12(f) to "strike [Defendants'] motion as their defense is an insufficient defense."  (Doc. 22 at 1).  This was unaddressed in the R&R.  Plaintiff's Response spends but a handful of analysis-free sentences which can be interpreted to represent his Federal Rule 12(f) argument, with the vast majority of the document's substance pertaining to the Motion to Dismiss.  (*Id.*).  According to the Local Rules for the Western District of Texas, all

relief requested must be made by a separate, standalone motion. Local Rule CV-7(c)(1). Therefore, under Local Rule CV-7(c)(1), any relief Plaintiff intended to request under Federal Rule 12(f) should have been sought by a standalone motion. Accordingly, Plaintiff's Response will be construed only as a response to the Motion to Dismiss, and not as a Federal Rule 12(f) motion. The Court cannot grant any Federal Rule 12(f) relief at this time.

## A.   Merits of the Original Complaint[1]

### i.      Fourteenth and First Amendments

Plaintiff objects to the Magistrate Judge's conclusion that Plaintiff had not adequately alleged a constitutional violation because the elements of a Fourteenth Amendment violation were not sufficiently pleaded. (Doc. 31 at 4–5). According to Plaintiff, the R&R considers only the Fourteenth Amendment as a ground for asserting a constitutional violation, to the exclusion of the First Amendment "right to be heard." (*Id.* at 5).

Plaintiff argues that he indeed did assert a First Amendment claim for Defendants' alleged denial of his right to "redress the [G]overnment of [his] grievance." (*Id.* at 2, 4, 8–9). Plaintiff characterizes this violation as his inability to timely file his appeals and other documents in other court proceedings. (*Id.* at 3–5). The Magistrate Judge found deficient Plaintiff's Fourteenth Amendment claim because it failed to allege "a right guaranteed under the [] Amendment." (Doc. 29 at 11). In large part, Plaintiff's attacks in this regard do not constitute a rebuttal to any of the substance in the R&R, but instead stand to restate rather superfluously the alleged consequences of Defendants' decision to utilize the Postal Service as the exclusive mail delivery service. (Doc. 31 at 4).

---

[1] For ease of reading in the following analysis, "Original Complaint" will refer to both the Original Complaint and the More Definite Statement. (Docs. 1, 5).

At the outset, the Court empathizes with Plaintiff's concerns that his writing and diction may be "hard to understand." (*Id.* at 8). While this concern is perhaps generally applicable to prisoners proceeding pro se, the Court reiterates the judicial principle of interpreting pro se litigants' filings liberally so as to minimize the impact of pro se representation upon the litigants' outcomes. *See Golden v. City of Longview*, No. 6:20-CV-00620-JDK, 2021 WL 3829126, at *3 (E.D. Tex. Aug. 4, 2021) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). This case is no exception.

Plaintiff also surmises that the Magistrate Judge "did not read" his Response to the Motion to Dismiss in exclaiming that he was asserting a First Amendment violation. (Doc. 31 at 5, 8). The Court, in conducting a *de novo* review of the Magistrate Judge's conclusions, also heeds Plaintiff's Response. Thus, whether the Magistrate Judge specifically considered Plaintiff's Response in drafting the R&R, the Court considers it now.

Turning to the objection, as the Magistrate Judge observed, "the 'right of access to the courts . . . is founded in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, and the Fifth and Fourteenth Amendment Due Process Clauses.'" (Doc. 29 at 5–6 (citing *Spears v. McCraw*, No. 20-50406, -- F. App'x -- , 2021 WL 3439148, at *2 n.16 (5th Cir. Aug. 5, 2021))). The right to access the courts of the United States comes from the First Amendment's Petition Clause, while the Due Process Clause of the Fourteenth Amendment confers the right for this access to be meaningful. *Hill v. Walker*, 718 F. App'x 243, 247–48 (5th Cir. 2018) (unpublished). Prison authorities are required either to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Lewis v. Casey*, 318 U.S. 343, 346 (1996). In other words, all that is mandated by the two Amendments is that a prisoner be

allowed "meaningful access to the courts." *Id.* at 248.  The Petition Clause, which states that the people have the right to "petition the Government for a redress of grievances," is "really inseparable" from Fourteenth Amendment Due Process claims.  U.S. CONST. amend. I; *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 335 (1985).

Therefore, the analyses for recovery under both the First Amendment and the Fourteenth Amendment are identical.  The Magistrate Judge appears to have conducted his analysis only upon specific mention of the Fourteenth Amendment.  (*See* Doc. 29 at 6 ("To state a Fourteenth Amendment claim for denial of the right to access the courts . . . .")).  The Court, having conducted a *de novo* review of this objection, is of the opinion that the findings and conclusions of the Magistrate Judge are correct, and that the objection is without merit.  Therefore, the Court hereby adopts the findings and conclusions in the R&R relating to the analysis under the Fourteenth Amendment right of meaningful access to the courts, as they are equally applicable to the First Amendment right to petition.

### ii.        Law Library and Mail Room Policies

Another of Plaintiff's objections, construed liberally, is that the R&R improperly concludes that the Lynaugh Unit contains a satisfactory system for mailing legal mail.  (Doc. 31 at 6–7).  This objection is multi-pronged but can be reduced to one singular prong advancing the inadequacy of policies allegedly established by Defendants at the Lynaugh Unit law library and mail room, with particular emphasis on the latter.  (Doc. 22 at 3–4).  Notably, this objection is distinct from the ostensibly similar objection concerning the adequacy of the Postal Service as the Lynaugh Unit's exclusive mail delivery system—this objection only regards the policies for law library and mail room usage.  A section addressing the objection pertaining to the exclusivity of the Postal Service is to follow.

In the mail room, Plaintiff claims that policies pertaining to a 25-page limit on printing and a five-dollar minimum balance requirement for the inmate's trust account are unconstitutional.  (Doc. 5 at 2–4, 10–12).  The law library's policies purportedly run afoul of Plaintiff's rights by preventing facility access on the weekend and restricting his access to public information and social media.  The Magistrate Judge concluded that the restraints on access to the law library and in the mail room as alleged were insufficient to buttress a constitutional rights violation.  (Doc. 29 at 8–10).  Specifically, the Magistrate Judge held that Plaintiff did not provide authority for the constitutional right to page limits greater than 25 pages, weekend law library times, free printing, social media access, or additional weekday law library scheduling. (*Id.*).  In the absence of these sources, and furthermore considering Plaintiff's evident desire to let the Court decide for its own what the page limits, fund account requirements, and law library access times should be, as the R&R explains, the Magistrate Judge was not willing to endorse Plaintiff's proposed line-drawing.

Plaintiff's objections feature a number of cases.  (*See generally* Doc. 31).  None of Plaintiff's new sources provide any direct authority for the proposition that a 25-page limit, a lack of weekend access hours to the library, or the inability to access social media to locate other outstanding complaints are a per se violation of the constitutional right to access the courts. Interpreting Plaintiff's worries about accessing social media as corresponding to his "right to access public information" argument present in his Original Complaint, Plaintiff still has not cited any source guaranteeing this prisoner's right.  (*See* Docs. 1, 5).

Furthermore, Plaintiff likens this case to *Ruiz v. Estelle*, claiming that the "culmination of acts" he alleges "together cause[s] injury."  (Doc. 31 at 6).  In *Ruiz*, the District Court for the Southern District of Texas held that the policies in place at various units of the Texas

Department of Corrections ("TDC") "significantly restrict[ed] the times and places inmates may work on legal matters" and prevented inmates from pursuing their legal actions.  503 F. Supp. 1265, 1367 (S.D. Tex. 1980).  In particular, TDC had "hamper[ed] inmates' opportunities to engage in productive legal research," in addition to other restrictions not relevant here.  *Id.* at 1371.  Most TDC units had individually established their own policies concerning the time and place when inmates can work on legal matters.  *Id.* at 1367–68.  These policies included permitting legal work to be performed only in the law library or alternatively the inmates' cells. *Id.* at 1368.  Where legal work was restricted to the law library, restrictions on the maximum weekly allotted time to access the library additionally limited the amount of time inmates may spend on legal matters.  *Id.*  Coupled with inhibited communication with more learned inmates, access to inmates' own attorneys, and retaliatory practices against those who attempted to participated in the judicial process, the *Ruiz* court found these restrictions on the right of access to the courts to be unreasonable.  *Id.* at 1370–73.

    In this case, Plaintiff has not pleaded that he is prevented from working on legal matters, such as reading or writing documents, outside of the Lynaugh Unit law library.  Plaintiff's closest contentions to a restriction found unreasonable in *Ruiz* are his claims that Defendants implement a ten-hour weekly maximum for law library access and preclude weekend law library hours.  Yet, Plaintiff has not explained how ten hours each week during the weekdays is unreasonable or insufficient amount of time for him to be able to meet his deadlines, despite many invitations to do so, from the R&R to the Order for More Definite Statement.  (Docs. 4, 29).  He has not alleged he cannot work on legal matters outside of the law library, or that a certain minimum number of library access hours is necessary.  Plaintiff's other asserted limitations on paper and the minimum required trust account balance do not appear to affect the

time or location in which he can prepare his legal arguments, and Plaintiff has not pleaded to the contrary.  The Court is not inclined to recognize a constitutional violation for every instance in which prison directors place limits on maximum law library access hours.  *See Ruiz*, 503 F. Supp. at 1371 (acknowledging that "as long as meaningful access to the courts is guaranteed, the states are free to experiment with various means of achieving this goal").  With no explanation as to whether and how Defendants' actions are unreasonable, Plaintiff's pleadings are severely vitiated.  Plaintiff's allegations are therefore insufficient on their face to state a violation of his right to access the courts.

Additionally, Plaintiff's briefings are devoid of authority indicating that a trust account minimum balance requirement is unconstitutional.  As the Magistrate Judge concluded, Plaintiff has no evident right to free postage or paper supplies in prison.  (Doc. 29 at 10).  Further, Plaintiff does not describe how a five-dollar trust account balance policy is unreasonable for himself or other prisoners.  The Magistrate Judge's holding shall stand.

Plaintiff's other contentions concerning the inability to "post[] signs, post anything on social media, or even look for others in general that have had this happen to [them]" do not accompany any right to access the courts.  (Doc. 31 at 6).  Plaintiff has otherwise not contended that an inability to access social media is unreasonable.  Put simply, Plaintiff has no right to access social media or post signs, and the right of access to the courts implicates no such liberty.  *See Walker v. Clark*, No. 2:17-CV-221-D, 2019 WL 5685340, at *15 (N.D. Tex. Feb. 25, 2019).  The Court will not contrive one here.

The Court, having conducted a *de novo* review of this objection, is of the opinion that the findings and conclusions of the Magistrate Judge are correct, and that the objection is without

merit.  Therefore, the Court hereby adopts the findings and conclusions in the R&R relating to the adequacy of the mail room and law library policies present at the Lynaugh Unit.

### iii.        Exclusivity of the Postal Service

Relatedly, Plaintiff also objects to the R&R's finding that the use of the Postal Service as the exclusive mailing service does not produce a reason to believe Defendants' conduct is unreasonable.  (Doc. 31 at 2–4).  The Court first notes that Plaintiff concedes he "may not have a right to a certain delivery service."  (*Id.* at 3).  Yet, Plaintiff argues that the Magistrate Judge, in concluding that Plaintiff did not "suggest an alternative source for mail distribution," (Doc. 29 at 7), erred, since he had contemplated some alternatives in his Response.  (Doc. 31 at 4–5).

It is indeed true that the R&R does not mention any one of the "United States Parcel Service ["UPS"], Federal Express, or many other reliable carriers" which Plaintiff signified in his Response to the Motion to Dismiss.  (Doc. 22 at 5).  The Magistrate Judge, however, did not seem to reach his conclusion based on Plaintiff's failure to describe *any* alternative, private mailing service.  (Doc. 29 at 7).  Rather, as the R&R states, the Original Complaint itself lacks mention of a specific service to which Plaintiff believes he is entitled as an option at the Lynaugh Unit.  (*Id.*).  Notwithstanding whether Plaintiff mentioned an alternative service in his Response, the Original Complaint must delineate the relief requested—here, a mail delivery service—along with the authority supporting such relief, lest the Court be subjected to merely guessing which would be most appropriate.  Because the Original Complaint omits this language, the vague, indeterminate form relief described in the Response should not be granted.

Even if Plaintiff's language from the Response were incorporated into the Original Complaint, the deficiencies noted in the R&R would still not be addressed.  Plaintiff does not notate anywhere the spurious requirement that prison systems such as the Lynaugh Unit offer an

individual private mailing service.  (*See* Docs. 1, 5, 22, 31).  Plaintiff himself appears to delegate to the Court the decision of whether to require Defendants to implement one or more of the Federal Express, UPS, or another third-party mail delivery service at the Lynaugh Unit. Regardless, this is inconsequential, for even if Plaintiff's Original Complaint were equipped with a request for a particular mailing service, the conclusion would be identical.  Judicial sanctioning of a private party company is ill-advised, and in this scenario, is unwarranted.  This is not a decision which should be made by this Court, and Plaintiff presents no reason otherwise.

Plaintiff's qualms about *Harlow v. Fitzgerald* and *Foster v. City of Lake Jackson* offer no resolution.  Plaintiff cites the two cases generally in contending that Defendants "should have known that the [Postal Service] is delinquent in the delivery of the mail."  (Doc. 31 at 3). Plaintiff argues that *Harlow* supports the conclusion that "Defendants are not obliged under law to *only* use [the Postal Service]."  (Doc. 31 at 8 (emphasis in original)).  This quote, however, does not appear anywhere in the *Harlow* opinion.  *See generally Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  Further, both the other portion of *Harlow* and the entirety of *Foster* which Plaintiff cites only pertain to the defense of qualified immunity, which as discussed briefly below, does not need to be addressed at this time.  *Foster v. City of Lake Jackson*, 28 F.3d 425, 430 (5th Cir. 1994); (*see also* Doc. 31 at 3–4).

As the Magistrate Judge identified, the costs associated with declaring the Postal Service to be an inadequate mail delivery system as a matter of law, not to mention the subsequent bureaucratic implications of finding the preeminent Government-operated mail service to be a basis for constitutional violations, would be epic in proportion.  In the absence of authority to the contrary, the Court refuses to endorse Plaintiff's proposition.

The Court, having conducted a *de novo* review of this objection, is of the opinion that the findings and conclusions of the Magistrate Judge are correct, and that the objection is without merit.  Therefore, the Court hereby adopts the findings and conclusions in the R&R relating to the exclusive provision of the Postal Service as the Lynaugh Unit's mail delivery service.

### B.      Qualified Immunity

Plaintiff lastly presents an objection to the R&R's conclusion that Defendants are entitled to qualified immunity.  (Doc. 31 at 6–7).  Because the Court concludes that Defendants' Motion to Dismiss should be granted for Plaintiff's failure to state a claim, the Court need not reach the issue of whether Defendants are entitled to qualified immunity.

### IV.      CONCLUSION

For the reasons stated above, it is **ORDERED** that Plaintiff's objections are **OVERRULED** and the R&R is **ACCEPTED** and **ADOPTED** by the Court. (Docs. 29, 31).

Further, the Court **GRANTS** Defendants' Motion to Dismiss. (Doc. 19).

Finally, the Court **ORDERS** that all other pending motions be **DISMISSED AS MOOT**, and that Plaintiff's claims be **DISMISSED WITH PREJUDICE**.

It is so **ORDERED**.

SIGNED this 8th day of December, 2022.

_____
DAVID  COUNTS
UNITED STATES DISTRICT JUDGE